PER CURIAM.
This appeal challenges the following opinion and final judgment of the circuit court:
*1038 “This cause coming on to be heard is submitted for a final judgment on the pleadings, stipulated testimony of witnesses and exhibits thereto and argument and briefs of the parties, and the Court having considered the same, the Court finds as follows:
“Amendment 3 of the Constitution of the State of Alabama (1901), authorizes the several counties of the State to levy and collect a special three-mill county wide school tax.
“A majority of the voters of Dale County, Alabama, voting in an election wherein the tax was submitted to the qualified electors of the county, approved such a tax.
“Section 3 of Amendment 3 of the Constitution of the State of Alabama (1901) provides as follows:
“ ‘The funds arising from the special county school tax levied and collected by a county shall be apportioned and expended as the law may direct....’
“In August of 1963, the Dale County Board of Education issued $280,000 in capital improvement warrants. In August of 1965, the Dale County Board of Education issued an additional $175,000 of capital outlay warrants. These warrants were payable, both as to principal and interest, from the proceeds of the three mill county wide school tax authorized to be levied on the taxable property in Dale County, Alabama.
“The State Superintendent of Education approved the issuance of the warrants in accordance with Title 16-13-91, Code of Alabama, 1975, (Title 52, Sec. 218, Code of Alabama 1940 as recomp. 1958). In determining whether or not the warrants should be approved, the State Board of Education used the following formula: the total revenue from collections of the three mill county wide school tax were determined for the immediate preceding year. Eighty percent of the previous year’s total ad valorem tax collection was then apportioned to the individual school boards within the county according to the Current Expense Ratio, as determined by the State Department of Education. If the school board’s apportioned share of 80% of the previous year’s total of the three mill tax was greater than an annual amount needed to repay the warrants, the warrants were approved.
“The three mill tax had been historically apportioned to the individual boards within the county according to the Current Expense Ratio as computed by the state Department of Education, in accordance with Title 16-13-34, Code of Alabama 1975.
“In so making the computations for approval in 1965, the State Board did not consider the Daleville Board of Education because they were not aware that it was or would come into existence.
“From the date of the issuance of the warrants, until 1981, the collections from the county wide three mill tax were remitted to the Dale County Board of Education. The proceeds from the tax were apportioned to the three individual school systems in accordance with the Current Expense Ratio as computed by the State Department of Education. The bonded indebtedness on the two capital outlay warrants was paid from the Dale County Board of Education’s apportioned share of the three mill tax.
“In 1981, a dispute arose as to whether or not the warrants should be paid solely from Dale County School Board’s apportioned share of revenues, instead of from the net proceeds of the tax before apportionment.
“According to Section 16-3-11 (Code of Alabama, 1975), the State Board of Education, through the State Superintendent of Education and his professional assistants, shall exercise general control and supervision over the public schools of the state.
“ ‘The state superintendent of education, under the rules and regulations promulgated by the state board of education, shall have the authority to review actions and orders of county and city boards of education and of county superintendents of education and city superintendents of schools in matters relating to finance and other matters seriously affecting the educational interest. Upon such review, the state superintendent of education *1039 shall have the power to determine from the facts the just and proper disposition of the matter. The order of the state superintendent of education shall be binding.’ Section 16-4-8 (Code of Alabama 1975).
“Section 16-13-32 (Code of Alabama 1975) provides that ‘[a]ll local school monies raised for the support of public schools by taxation or otherwise shall be apportioned and expended in the district or districts or counties in which the same were raised.’
“And Section 16-13-34 (Code of Alabama 1975) provides for an apportionment of funds from the County Board to the City Board each year so that a uniform minimum education program will be established for the county and each school district therein. This section also provides for the formula for computing the monthly current expense cost and the minimum amount to be apportioned to City Boards of Education.
“According to Article [2, 3, and 3A of Tit. 16, Chapter 13, School Finances Generally] (Code of Alabama 1975), the proceeds from the three mill county wide tax is to be apportioned so that each child in each district will have an equal minimum education in accordance with the uniform minimum educational program. The county wide three mill tax is to be apportioned so that there is an equalization of educational opportunity for all the school children of the State for minimum educational benefits.
“Section 16-13-90 (Code of Alabama 1975) authorizes county or city .boards of education, with the approval of the State Superintendent of Education, to issue capital outlay warrants for certain purposes.
“According to Section 16-13-91 (Code of Alabama 1975), the State Superintendent shall not approve the issuance on any warrants which would jeopardize the minimum state program of education as prescribed by law and the rules and regulations of the State Board of Education or approve the issuance of any warrants when the principal and interest of any other warrants constituting a preferred claim against the same tax is overdue and unpaid.
“Section 16-13-98 (Code of Alabama 1975) provides that all warrants issued hereunder shall be preferred claims against the county wide three mill tax and shall be secured by a pledge of the entire net proceeds of said tax.' The warrants shall have preference over claims for salaries or other operating expenses or any other purposes.
“In construing [Article 2, 3, 3A and 5 of Tit. 16, Chapter 23] in pari materia, it is apparent that the intent or policy of the legislature was to provide for the equality of education under a uniform minimum standard program and to provide for security for warrant holders. In so doing, the legislature provided that the county wide three mill tax was to be apportioned and that capital outlay warrants were preferred claims against the tax and secured by a pledge of the entire net proceeds of the said tax.
“In so reconciling this apparent contradiction, this Court is of the opinion that the legislature intended that the proceeds from the tax be apportioned and that warrants be retired from the apportioned share of the proceeds of the tax. In the event of insolvency or default, the warrant holders would have preferred claim against the said tax to the extent of the entire net proceeds of said tax.
“In so construing the statutes, the rights of the warrant holders are not impaired and the policy of equality of education under a uniform minimum standard program is preserved.
“If the statutes are construed otherwise, there would be a disproportionate distribution of the proceeds from the county wide three mill tax between citizens who were taxpayers and resided in a city school district subject to a city board of education and citizens who were taxpayers and resided in a school district subject to a county board of education.
“The Court further finds that the State Superintendent of Education is charged with approving the warrants and *1040 charged with reviewing actions of county and city boards of education in matters relating to finance and other matters seriously affecting the educational interest. In so approving these warrants, the State Board computed the previous year’s three mill county wide school ad valorem taxes for Dale County as a whole. Eighty per cent of the tax was then apportioned to individual school boards within the county according to the Current Expense Ratio as determined by the State Department of Education. If the apportioned share of 80% of the previous year’s total tax was greater than the annual amount needed to repay the warrants (proposed to be issued or outstanding), the issue was approved.
“Therefore, the State Superintendent issued his approval on the basis that the warrants would be retired from the apportioned share and not from the net proceeds prior to apportionment.
“The Court further finds that as between the Dale County Board of Education and the two City Boards, the warrants were retired from the apportioned share from 1963-1981.
“The formula for determining approval of the issue by the State Board was based on the apportioned share and the method of retiring the warrants from the apportioned share was approved and acquiesced in by the State Board of Education. As between competing school boards, the State Superintendent has the authority to review matters concerning finance and other matters seriously affecting the educational interest. As between these school boards, the State Board, through the State Superintendent, has approved the warrants being retired from the apportioned share, rather than ‘off-the-top.’ Since this Court finds that the rights of third parties with standing, that is the warrant holders, are not impaired or unconstitutionally affected by the method used from 1963-1981, this method of retiring the warrants from the apportioned share is not prohibited or illegal.
“Therefore, based on this Court’s construction of the Statutes involved or based on the actions of the State Superintendent of Education in so approving the issuance of the warrants and approving and acquiescing in the method of retiring the warrants from the apportioned share, based on either or both together, this Court finds that the relief prayed for in the bill for declaratory judgment filed by the plaintiffs, the Daleville City Board of Education and the Ozark City Board of Education should be granted.
“In 1982, the Legislature amended Section 16-13-98, Code of Alabama 1975, so as to provide that ‘all warrants issued hereunder shall be preferred claims against the county and city board of education’s apportioned share of said tax.’
“Regardless of this amendment, the Court’s findings and judgment would be as set out above and below. The Court is of the opinion that this amendment clarified the Legislature’s position in this matter.
“Therefore, IT IS ORDERED, ADJUDGED AND DECLARED as follows:
“1. That the warrants in question shall be payable solely from the Dale County Board of Education’s apportioned share of the proceeds of the special tax, the county three mill tax in question in this cause.
“2. That this Order does not prohibit the payments of the warrants from any other funds which may be available under any other provision of the law.
“3. That the Dale County Board of Education shall pay to the Ozark City Board of Education and the Daleville City Board of Education, all sums previously withheld from their respective share of the proceeds from the county wide three mill tax.
“4. That the bond obligations of the Dale County Board of Education are not unconstitutionally impaired.
“5. That the defendant, Dale County Board of Education, is not entitled to any accounting or to damages.
“6. That the plaintiff-intervenors are not entitled to the relief prayed for in their complaint.
*1041 “7. That the rights of the warrant holders have not been unconstitutionally impaired.
“DONE, this the 10 day of October, 1984.
“s/ P.B. McLauchlin, Jr.
“P.B. McLauchlin, Jr., Judge
“33rd Judicial Circuit
“Dale County, Alabama”
We adopt the trial court’s opinion as the opinion of this Court.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES and BEATTY, JJ., concur.